UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ESTATE of Ainsworth Mallett, and | : | Hon. Joseph H. Rodriguez |
| ESTATE of Jacqueline Mallett, and | : | |
| ESTATE of Drew Mallett, and | : | Civil Action No. 14-2438 |
| NICOLE MALLETT, individually, and | : | |
| ERROLL MALLETT, MD and | : | |
| NICOLE MALLETT in their capacity as | : | |
| Co-Administrators of the above three | : | |
| Separate Estates, | | |
| | : | |
| Plaintiffs, | : | MEMORANDUM OPINION |
| | : | & ORDER |
| v. | : | |
| | : | |
| SCHMIDT BAKING CO., INC. and | : | |
| MARK TAYLOR, | : | |
| | : | |
| Defendants. | : | |

This matter is before the Court on Defendants' motion in limine to limit the

trial testimony of Plaintiffs' liability expert Brooks Rugemer. Oral argument on

the motion was heard on January 9, 2018, and the record of that proceeding is

incorporated here. As an initial matter, the Court notes that agency between

Defendants Mark Taylor and Schmidt Baking Co., Inc. ("Schmidt's Bakery") has

been admitted. The negligent hiring and retention claims against Schmidt's

Bakery have been dismissed by consent. The sole remaining direct claim against

Schmidt's Bakery is limited to the manner in which Taylor was trained.

**The Prior Order of the Court Disallowing Supplemental Reports from Brooks Rugemer will be Enforced and his Testimony Limited to What Was Contained in the Reports Provided Prior to his Deposition.**

The scope of Mr. Rugemer's proffered testimony has already been addressed via Court Order. The following chronology is relevant:

1.  Initial Report June 23, 2015;

2.  Supplemental Report October 21, 2015;

3.  Deposition completed February 25, 2016;

4.  Supplemental Report of March 4, 2016;

5.  Supplemental Report of March 7, 2016;

6.  April 18, 2016 Order barring Supplemental Reports.

Discovery and documents were available to be reviewed by Mr. Rugemer before he prepared his first two reports and submitted to a deposition, however he was not provided with a number of discovery documents prior to preparing his two initial reports. The relevant documents are listed in Plaintiff's letter of March 4, 2016.

Mr. Rugemer will be allowed to testify at trial, but will not be permitted to support his opinion by claiming that he relied upon the discovery that existed prior to preparing his initial reports but was not reviewed by him before he prepared his reports and was deposed. Plaintiff should not suggest that the documents were relied upon and reviewed. The

Court's Order of April 18, 2016 striking Supplemental Reports will be

honored, as the materials intended to support the Supplemental Reports

were not available to the defense during Rugemer's deposition.

**Brooks Rugemer will Not be Permitted to Offer an Opinion as to Accident Reconstruction or Comment as to How the Accident Took Place or Who was at Fault for the Accident.**

At his deposition, Mr. Rugemer testified as follows:

Q.     Are you an accident reconstructionist?

A.     No I am not.

Q.     And I assume you hold no certifications in accident reconstruction?

A.     That's correct. I work with my accident recon team from time to time, but I'm not a certified accident reconstructionist.

Q.     Would you agree with me that in this particular case, the Mallet case that brings us here today, you made no effort to do an accident reconstruction?

A.     That's correct.

(Rugemer Dep., p. 14.) He continued:

Q.     In terms of not being a recon – I assume in your career you worked with recons?

A.     Yes.

Q.     And   do you refer to them in terms of the actual reconstruction of the accidents?

A.    Yes. If I'm offered a case where there's a recon necessary, I turn that over to our recon group.

(Rugemer Dep., pp. 110-111.)

Rugemer offered an opinion that Mark Taylor's driving was "careless" and "reckless" and a proximate cause of the accident. He will not be permitted to testify as to these issues given the lack of any effort to reconstruct how the accident actually took place and his difficulty with the definition of "reckless." (See Rugemer Dep., pp. 90-91.) Questions of carelessness, recklessness, or negligence are for the jury. As to "proximate cause," this is a jury issue as per this Court's prior ruling on the summary judgment motion.

**Brooks Rugemer will Not be Permitted to Rely upon Inadmissible Evidence to Support his Opinion as to the Negligent Training Claim.**

For an expert to provide opinion testimony, the opinion has to be based upon recognized standards, not inadmissible evidence. Mr. Rugemer relies on the following to support his claim of negligent training:

1.  Professional Truck Driver Institute (PTDI) curriculum;

2.  ABF Freight System handbook;

3.  CRST Driver Handbook;

4.  Maryland CDL Handbook; and

5. Large Truck Crash Causation Study (LTCCS).

The PTDI is not a trucking company. It does not set forth any kind of standard of care applicable to the duties of a trucking company. The PTDI apparently is a company that certified truck driving schools. This case does not involve a truck driving school. In addition, the PTDI does not set forth a formula for a safe driving distance. Mr. Rugemer will not be permitted to offer testimony as to an organization that certifies truck driving schools, which has no bearing on the issues in this case. (Rugemer Dep., pp. 32-36.)

The ABF and CRST handbooks are essentially hearsay. The companies are two of "thousands and thousands" of motor carriers. Mr. Rugemer admits that their handbooks are not binding on any of the parties in this case. The hearsay statements contained therein are not relevant to the issues in this case. Mr. Rugemer admits that they have nothing to do with Mr. Taylor. (Rugemer Dep., pp. 36-37.) He did not conduct any kind of survey to determine what any percentage of the "thousands and thousands" of trucking companies actually include in their handbooks.

The reliance on the Maryland Commercial Driver's manual is similarly misplaced. It does not set forth a standard of care that is binding on any of the parties in this case. Mr. Rugemer admits that he does not know if the driver's manual has the same effect of the Federal Motor Carrier

Safety Act ("FMCSA"). He has no idea if the manual was ever adopted by the legislature, or what was contained therein at the time that Taylor obtained his Commercial Driver's License ("CDL"). He admits that trucking is regulated by the Federal Government, which promulgates regulations that are binding on all "motor carriers." He further admits that there is nothing contained in the FMCSA regulations ("FMCSRs") that mandate a "motor carrier" to train as to what is considered to be a safe following distance, or that defines what a safe following distance is. Given these admissions that the binding regulatory authority does not promulgate regulations or set forth what is considered in the industry to be a safe following distance, the use of one State's driver's manual is misleading. It should not be before the jury as binding authority. (Rugemer Dep., pp.37-41, 44-47.)

As to the LLCCS study, Mr. Rugemer admits that he inaccurately cited the study, and that it does not stand for the proposition that "51%" of truck accidents are attributed to drivers following too closely. He admits that he cannot come up with an accurate figure because he does not have the necessary data. (Rugemer Dep., pp.70-76; LLCCS study referenced Rugemer.)

Mr. Rugemer fails to provide Fed. R. Evid. 702-compliant testimony "based on sufficient facts or data" to support his opinion that Schmidt Bakery's "driver safety and training program was deficient and fell far below industry standards." He opines that "Schmidt Baking failed to train or instruct Mark Taylor in the critical safety concept of safe and proper following distance."

Whether Mr. Rugemer believes that Schmidt Bakery should have trained as to safe and proper following distance, but had no such writings, does not answer the question. The presence or absence of such writings does not meet or fail to meet any FMCSA standard. No FMCSR specifies that an FMCSA-regulated "motor carrier" must have any written (or unwritten) policy or procedure in place to regulate, reinforce or remind its drivers who hold CDLs about "safe following distances." Mr. Rugemer cannot identify any FMCSR that defines what a "safe following distance" is. This Court's review of the record does not find one.

Mr. Rugemer resorts to more personal views as to what he thinks Schmidt Bakery's duty should be with respect to "safety programs." He offers the opinion that as a United States Department of Transportation ("USDOT") motor carrier:

[Schmidt] has a non-delegable duty to have truck safety programs in place to ensure the safety of their truck fleet as they operate on the public roadways and reduces the risk of highway accidents, such as this fatal rear-end crash.

But Mr. Rugemer does not find a "safe following distance" legal standard in FMCSR §383.5; FMCSR §383.5 contains no such standard. What FMCSR §383.5 does speak to is Safety Management Controls ("SMCs"). Citing the SMC definition does not turn Mr. Rugemer's personal view as to what is and what is not a "safe following distance" into an industry standard. Merely citing the SMC definition does not assist the jury. The SMC definition says nothing about what should be taught to drivers who already hold a commercial driver's license.

FMCSR §383.5 does not articulate any "safe following distance" standard. Mr. Rugemer fails to account for this fact. This is the definition:

[SMCs are] the systems, policies programs, practices, and procedures used by a motor carrier to ensure compliance with applicable safety and hazardous materials regulations which ensure the safe movement of products and passengers through the transportation system, and to reduce the risk of highway accidents and hazardous materials incidents resulting in fatalities, injuries, and property damage.

FMCSR §383.5.

The valid, current CDL that Mr. Taylor held on the date of accident was Maryland Class A CDL #T-460-585-098-714—a CDL with Tank and Double/Triples Endorsements. Mr. Rugemer does not dispute that as of

8

April 17, 2008, Mr. Taylor qualified to drive a truck. He concedes that Mr. Taylor was not disqualified from holding a CDL or operating a truck under any FMCSA Rule or FMCSR. There is no dispute that Mr. Taylor successfully completed a CMV driver's road test; that he held a driver's road test Completion Certificate; or that he presented a valid CDL or road test Completion Certificate to Schmidt's Bakery, that Schmidt's Bakery was entitled to accept. Mr. Taylor was properly and a fully qualified commercial truck driver under FMCSR §391.11 before Schmidt's Bakery hired him in the Spring of 2008.

For these reasons, as well as those expressed on the record,

IT IS ORDERED this 11th day of January, 2018 that Defendants' motion in limine to limit the trial testimony of Plaintiffs' liability expert Brooks Rugemer is hereby <u>GRANTED</u>.

 /s/ Joseph H. Rodriguez<br>
JOSEPH H. RODRIGUEZ<br>
U.S.D.J.